UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
ROMANUS CASTRO,

                                    Plaintiff,

            -against-

JOHN CUSACK, THE WILLIAM MORRIS AGENCY,
DANNY STRONG, LEE DANIELS, HANK AZARIA,
BOB LOWRY, IMAGINE TELEVISION, 20TH CENTURY
FOX TELEVISION ENTERTAINMENT GROUP AND
SUBSIDIARIES, LITTLE CHICKEN PRODUCTIONS,
SONY PICTURES TELEVISION, 50 CANNON
ENTERTAINMENT, BOB LOWRY TELEVISION, LEE
DANIELS ENTERTAINMENT, DANNY STRONG
PRODUCTIONS, MATTHEW CARNAHAN CIRCUS
PRODUCTIONS, TOUCHSTONE TELEVISION, ABC
STUDIOS, DOES 1-20, and SHOWTIME NETWORK,

                                    Defendants.
------------------------------------------------------------------ x

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ JUL 26, 2019 ★
BROOKLYN OFFICE

MEMORANDUM & ORDER

15-cv-6714 (ENV) (LB)

VITALIANO, D.J.

      Plaintiff Romanus Castro, proceeding *pro se*, filed an amended complaint on April 14, 2016, alleging that defendants, all involved in the entertainment industry, infringed on his rights in a manuscript, in violation of the copyright laws, by using the manuscript to create the hit television shows Empire, Dirt and Huff. Dkt. No. 8. Several defendants have appeared and moved to dismiss or quash service. Plaintiff has been unable to serve other defendants but seeks default judgment against them nonetheless.

      For the reasons that follow, defendants' motions are granted, plaintiff's motions are denied and the amended complaint is dismissed with prejudice.

## Background[1]

This is the second lawsuit Castro has brought in this Court relating to the same screenplay. Castro alleges that, in 2003, he wrote a screenplay, entitled *The Summit of Beauty and Love* (the "manuscript"), about a "music journalist who falls in love with a musician who is schizophrenic." Dkt. No. 8 ¶ 5. Castro, sensing that fame and fortune would follow if he could only get his work into the right hands, sent the manuscript to actor John Cusack through his agent at the William Morris Agency. *Id.* Neither Cusack nor his agent ever responded. *Id.*

On November 7, 2004, the television series Huff premiered on Showtime. *Id.* ¶ 6. It soon became apparent to him, so he claims, that "the entirety of [the] story and scenes" in Huff "were exactly the same" as in the manuscript. *Id.* Castro could not quite discern why Huff's executive producer was Bob Lowry, to whom he had not sent the manuscript, or why Huff starred another actor, Hank Azaria, rather than Cusack. *Id.* ¶ 7. Castro represents he took no legal action at that time because of the financial and emotional toll he endured as a result of the "theft" of the manuscript. *Id.* Huff ended its run in 2006. *Id.* On January 2, 2007, another television show, Dirt, premiered on the FX network. *Id.* ¶ 8. Castro again came to believe that the manuscript's plotlines and characters had been stolen from him. *Id.* He alleges that the stolen manuscript was used yet a third time to create the television show Empire, which premiered on FOX. *Id.* ¶ 9.

As might be predicted, the complaint compares characters and scenes in the manuscript with what Castro alleges are identical, or at least substantially similar, characters and scenes in

---

[1] The facts are taken from plaintiff's amended complaint, and all reasonable inferences are drawn in his favor, as they must be on a motion to dismiss. Because plaintiff is proceeding *pro se*, his pleadings are construed liberally to raise the strongest arguments that they suggest. *See Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003).

Huff, Dirt and Empire. *See, e.g., id.* ¶ 10-41. Plaintiff seeks $550 million in compensatory, punitive and statutory damages for copyright infringement, conversion and conspiracy, as well as injunctive relief to bar the distribution of Huff, Dirt and Empire. *Id.* at 31-33.

On September 14, 2016, Danny Strong moved to quash service pursuant to Federal Rule of Civil Procedure 12(b)(5). Dkt. No. 27. On June 29, 2017, Lee Daniels Entertainment also moved to quash service. Dkt. No. 131.

The trek to the courthouse did not end there. Several defendants have filed individual motions to dismiss: Showtime Networks Inc. ("Showtime") and Sony Pictures Television Inc. ("Sony Pictures"), Dkt. No. 84; Touchstone Television Productions, LLC, d/b/a ABC Studios ("ABC"), Dkt. No. 90; Imagine Television, LLC ("Imagine Television"), Dkt. No. 92; William Morris Endeavor Entertainment, LLC, on behalf of William Morris Agency ("WMA"),[2] Dkt. No. 96; Hank Azaria, Dkt. No. 106; Twentieth Century Fox Film Corporation ("Twentieth Century Fox"), incorrectly sued as 20th Century Fox Television Entertainment Group and Subsidiaries, Dkt. No. 108;[3] and Little Chicken Productions, Inc. ("Little Chicken"), Dkt. No. 119.

On March 3, 2017, Magistrate Judge Bloom issued a Report & Recommendation ("R&R"), recommending that plaintiff's amended complaint be dismissed without prejudice against defendants Lee Daniels, Lee Daniels Entertainment and Danny Strong Productions. Dkt. No. 110. On November 16, 2018, in light of Castro's sporadic attempts to effect service after Judge Bloom's R&R had issued, the Court requested that Judge Bloom issue a supplementary R&R as to "whether these three defendants, and any additional defendants, should be dismissed

---

[2] William Morris Endeavor Entertainment filed the motion as "parent to a successor-in-interest to certain assets and liability relating to Defendant William Morris Agency's talent and literary agency business." *See* Dkt. No. 96-1 at 1 n.1.

[3] Imagine Television also filed a joinder in Twentieth Century Fox's motion. Dkt. No. 115.

for lack of proper service or for failure to prosecute." *See* Order Referring Motion, dated Nov. 16, 2018. The Court also referred Lee Daniels Entertainment's motion to quash service. *Id.*

On February 19, 2018, Judge Bloom issued her supplementary R&R, Dkt. No. 137,[4] recommending that the amended complaint be dismissed without prejudice against defendants Lee Daniels, Lee Daniels Entertainment, Danny Strong Productions, 50 Cannon Entertainment and Coquette Productions, pursuant to Rule 4(m), and that plaintiff be afforded 30 days leave to properly serve defendants John Cusack, Bob Lowry, Bob Lowry Television and Matthew Carnahan Productions. Castro filed objections to the supplementary R&R on February 26, 2019, Dkt. No. 138, and Lee Daniels Entertainment responded to plaintiff's objections on March 11, 2019. Dkt. No. 142.

## Standard of Review

Generally, under Rule 12(b), a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When reviewing dismissal motions made under subsection (b)(6), a court "must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the [p]laintiff." *Anzelone v. ARS Nat'l Servs., Inc.*, No. 2:17-cv-04815, 2018 WL 3429906 (E.D.N.Y. July 16, 2018). To survive such a motion, a complaint must plead enough facts "'to state a claim to relief that is plausible on its face.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

---

[4] Neither Judge Bloom's original R&R nor her supplementary R&R touched on the substantive merits of Castro's claims. They were limited solely to issues of service of process and failure to prosecute.

for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although a plaintiff need not provide "detailed factual allegations," *Twombly*, 550 U.S. at 555, the pleading rules do demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

Motions to dismiss can be referred to a magistrate judge for initial determination. In reviewing a magistrate judge's R&R in such a reference, a district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The response to the initial reference can, as here, result in a supplementary reference. Ultimately, the district judge need only be satisfied "that there is no clear error on the face of the record" to accept the reviewed R&R, provided no timely objection has been made in writing. *Urena v. New York*, 160 F. Supp. 2d 606, 609-10 (S.D.N.Y. 2001) (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)); *see also Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

The district judge, however, is required to "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 116 (2d Cir. 2010). Objections that are general, conclusory, or "merely recite the same arguments presented to the magistrate judge" do not constitute proper objections and are reviewed only for clear error. *Sanders v. City of New York*, No. 12-CV-113 (PKC)(LB), 2015 WL 1469506, at *1 (E.D.N.Y. Mar. 30, 2015) (citation omitted). Clear error exists "where, upon a review of the entire record, [the district judge] is left with the definite and firm conviction that a mistake has been committed." *Saveria JFK, Inc. v. Flughafen Wien, AG*, No. 15-CV-6195 (RRM) (RLM), 2017 WL 1194656, at *2 (E.D.N.Y. Mar. 30, 2017).

Here, of course, Castro's complaint has come under fire from multiple defendants on

multiple theories, not all of which were referred to Magistrate Judge Bloom or fall within the ambit of her R&R. Those motions not referred deal, principally, with the substantive propriety of the amended complaint. They are reviewed by the Court *de novo* in line with the standard articulated above.

## Discussion

I. Threshold Barriers

a. Res judicata

The amended complaint's allegations concerning Huff are barred by dictates of *res judicata* as to defendants Hank Azaria, WMA, Showtime, Bob Lowry, Sony Pictures and 50 Cannon Entertainment. More than a decade ago, Castro filed a copyright infringement action against many of the same defendants named in the instant complaint, based solely on Huff's alleged infringement of the manuscript. That action was dismissed with prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B),[5] after the Court granted Castro two opportunities to amend. *See* Order and Civil Judgment, Dkt. No. 7, *Castro v. Azaria*, No. 1:06-cv-03853-ENV-LB; *cf. Cieszkowska v. Gray Line New York*, 295 F.3d 204, 206 (2d Cir. 2002) (affirming dismissal of *pro se* complaint on principles of *res judicata* where plaintiff's prior complaint, arising out of the same events, was dismissed for failure to state a claim, pursuant to § 1915(e)(2)(B)); *Bey v. City of New York*, 454 F. App'x 1, 5-6 (2d Cir. 2011) (summary order) ("[T]his Court has held that res judicata applies to *pro se* plaintiffs whose claims in a second action are based on the same factual predicates presented in the first action."). Castro, therefore, cannot revive his claims

---

[5] Under § 1915(e)(2)(B), a district court shall dismiss an action if it is "frivolous or malicious" or "fails to state a claim on which relief may be granted[.]" § 1915(e)(2)(B)(i)-(ii). The provision "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

against Hank Azaria, WMA, Showtime, Bob Lowry, Sony Pictures and 50 Cannon Entertainment relating to Huff's alleged infringement of his rights in the manuscript.

    b. No Proper Service of Process

        i. Danny Strong

On July 29, 2016, a summons was returned reflecting that it was executed on Danny Strong at 405 Lexington Ave., 19th Floor, New York, New York 10174. *See* Dkt. No. 12. Strong, however, does not live or work at that address or have a registered agent who can accept service there; it is, in fact, the address of Creative Artists Agency ("CAA"), which is one of Strong's entertainment representatives. Dkt. No. 27-1 at 3; *see also* Dkt. No. 27-2 ¶ 3 (Decl. of Danny Strong) ("I do not live at this address, I am not employed at this address, I do not regularly transact business at this address, and I do not hold this address out as my place of business.").[6] Nonetheless, counsel for Strong offered to accept service on his behalf if Castro granted Strong a reasonable period of time to respond to the amended complaint. Dkt. No. 27-4 ¶ 3. Castro refused. Dkt. No. 27-6 at 2.

This skirmish is fundamental. "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104, 108 S. Ct. 404, 409, 98 L. Ed. 2d 415 (1987). On a Rule 12(b)(5) motion, "the plaintiff bears the burden of establishing that service was sufficient." *Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010) (summary order). Castro did not satisfy the essential requirements of service prescribed by Rule 4(e). By his own account, he did not deliver process to Danny Strong personally, at his "dwelling or usual place of

---

[6] There is no dispute over Strong's assertions in the record.

abode" or to his authorized agent for service.[7] *See* Fed. R. Civ. P. 4(e)(2). Nor did he serve Danny Strong at his "actual place of business," as is permitted under New York law. *See* N.Y. C.P.L.R. § 308; *see also* Fed. R. Civ. P. 4(e)(1) (providing that service may be effectuated by "following state law" in the state where the district court is located). As a result, Danny Strong's motion to quash service must be granted.

    ii. Lee Daniels Entertainment

The supplementary R&R outlines the extraordinary efforts Judge Bloom has taken to facilitate for plaintiff the service of process on various otherwise unserved defendants. Despite the grant of at least five chances to do so, Castro has failed to properly serve Lee Daniels Entertainment with process; that is, in a manner compliant with either California or New York state procedure. Dkt. No. 137 at 8. As Judge Bloom correctly observed, "New York law simply does not allow service on a corporation by mail. . . . While California does allow service on a corporation by mail, plaintiff has not complied with sections 416.10, 415.20, or 415.30 of the California Code of Civil Procedure." *Id.* With that understanding, she recommended that Lee Daniels Entertainment's motion to quash service be granted as well. This has drawn plaintiff's objection, in conclusory fashion, that the "blame lies squarely with the *defendants*, who have done all they can to avoid answering the complaint." Dkt. No. 138 at 2 (emphasis original).

But, regardless of their rank, every defendant is entitled to proper service, and it is the plaintiff's obligation to satisfy that requirement. Indeed, in placing blame on defendant, Castro acknowledges that the obligation to effect service of process, which rests with him, has not been

---

[7] Castro asserts that "[a] receptionist named 'Gram' accepted service on behalf of Strong" at the offices of CAA. *See* Dkt. No. 27-8 at 1. He, therefore, admits not only that he did not serve Strong personally, but also that Strong does not live at that address. *Id.* ("Of course Danny Strong does not live at the offices of CAA . . . .").

met. The Court adopts Judge Bloom's recommendation that Lee Daniels Entertainment's motion to quash service, Dkt. No. 131, be granted.

      iii. John Cusack, Bob Lowry, Bob Lowry Television, Matthew Carnahan Circus Productions, Coquette Productions, Lee Daniels, Danny Strong Productions and 50 Cannon Entertainment

Judge Bloom also determined that proper service was not effected on John Cusack, Bob Lowry, Bob Lowry Television, Matthew Carnahan Circus Productions, Coquette Productions, Lee Daniels, Danny Strong Productions and 50 Cannon Entertainment.[8] Dkt. No. 137 at 9. Although *pro se* litigants proceeding *in forma pauperis*, as Castro is, may enlist the help of the United States Marshals Service to effect service under Rule 4, these litigants are, for obvious reasons, still responsible for providing the Marshals Service with accurate information to enable proper service. *Id.* (citing *Meilleur v. Strong*, 682 F.3d 56, 63 (2d Cir. 2012) (affirming dismissal of complaint for failure to achieve timely service where *pro se* plaintiff understood "(a) the consequences of failing to comply with the court's orders and (b) the opportunities she had to communicate with the court to ensure her compliance and thus, potentially, to stave off those consequences")). Here, Castro has been "given five chances to provide the Marshals with proper service addresses for [these] defendants since he filed this case in November 2015." Dkt. No. 137 at 11. Almost four years later, he has still failed to do so.

Judge Bloom recommended that plaintiff be afforded 30 days leave from the date this Order is entered to properly serve defendants John Cusack, Bob Lowry, Bob Lowry Television

---

[8] The Court assumes familiarity with Judge Bloom's reasons for why service was improper as to each of these defendants, and it need not, and does not, repeat them now. *See* Dkt. No. 137 at 11-15.

and Matthew Carnahan Production and 45 days leave to file proof of proper service, and that if plaintiff still failed, the amended complaint be dismissed without prejudice against these defendants.[9] This is appropriate where the pleading has arguable merit. For the reasons that follow, however, affording additional time to serve the remaining defendants would be futile and is declined.

II.  Claims for Conversion and Conspiracy and Punitive Damages

Castro's state law conversion and conspiracy claims must be dismissed with prejudice because they are preempted by his claim under the Copyright Act. "The Copyright Act exclusively governs a claim when: (1) the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act under 17 U.S.C. §§ 102 and 103, and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004). The first prong of the preemption test is called the "subject matter requirement" and the second prong is called the "general scope requirement." *Price v. Fox Entm't Grp., Inc.*, 473 F. Supp. 2d 446, 457 (S.D.N.Y. 2007). "The subject matter requirement is satisfied if the claim applies to a work of authorship fixed in a tangible medium of expression and falling within the ambit of one of the categories of copyrightable works. The general scope requirement is satisfied only when the state-created right may be abridged by an act that would, by itself, infringe one of the exclusive rights provided by federal copyright law." *Id.* In this instance, both prongs are easily satisfied. All of these claims are directly hinged to plaintiff's rights in his manuscript and defendants'

---

[9] Judge Bloom did not recommend that plaintiff be given additional leave against other defendants for this purpose. Such further leave is clearly unwarranted.

alleged interference with them.[10]

As courts in this circuit have noted, state law claims for conversion and conspiracy, to the extent they are cognizable, are typically preempted by the Copyright Act. *Price*, 473 F. Supp. 2d at 461 (state law claims for conversion and conspiracy, among others, fail to "include any extra elements that make them qualitatively different from a claim for co-authorship under the Copyright Act"); *see also Kelley v. Universal Music Grp.*, No. 14 CIV. 2968 PAE, 2015 WL 6143737, at *6 (S.D.N.Y. Oct. 19, 2015) (claim alleging "conspiracy to swindle" plaintiff out of earnings preempted by Copyright Act); *Patrick v. Francis*, 887 F. Supp. 481, 484 (W.D.N.Y. 1995) ("[A] conversion claim contains no elements qualitatively different from plaintiff's rights under the Copyright Act."). Castro has no substantive response to this fatal flaw in the pleading of his conversion and conspiracy claims. He offers nothing more than a repeat performance that the amended complaint plausibly alleges these claims and that he has been engaged in "more than a decade long struggle for justice." Dkt. No. 90-13 at 13.

As for punitive damages, Castro simply reiterates his belief that defendants "willfully and with malice[] stole copyrighted intellectual property-and promulgated the work to all their cronies." *Id.* at 14. But, regardless of the depth of his lament, he cannot overcome the fact that "punitive damages are not available under the Copyright Act." *Oboler v. Goldin*, 714 F.2d 211, 213 (2d Cir. 1983). And, obviously, punitive damages are unrecoverable in his now dismissed state law claims. Accordingly, plaintiff's conversion and conspiracy claims are dismissed with prejudice and his request for punitive damages is struck.

---

[10] Additionally, even if not subject to preemption, New York law does not recognize a right of civil action for conspiracy. *See Dickinson v. Igoni*, 76 A.D.3d 943, 945, 908 N.Y.S.2d 85, 88 (2d Dep't 2010) ("[A] claim alleging conspiracy to commit a tort stands or falls with the underlying tort.").

11

III. <u>Copyright Infringement</u>

   a. Imagine Television

The amended complaint pleads *no* factual allegations against Imagine Television—it is, simply, identified as a producer of Empire. Dkt. No. 8 at 2. As noted earlier, district courts are required to afford *pro se* pleaders solicitude, not the use of a Ouija board. Where no fact beyond the name of a defendant is pleaded, there is nothing to liberally construe. In this cold factual world, it is plain that the amended complaint fails to allege or raise a plausible inference that Imagine Television ever had access to plaintiff's work, which might offer circumstantial evidence of copyright infringement. *See Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003). Castro's response – that the "culpability of all EMPIRE defendants will be address when and if they make a plea," *see* Dkt. No. 92-5 at 2 – is woefully insufficient to meet elemental pleading requirements and rescue his second-chance complaint against Imagine Television. Castro's claim for copyright infringement must be dismissed as to Imagine Television.

   b. Hank Azaria

In a similar fashion, the amended complaint makes no allegation that Azaria, one of the actors who appeared in Huff, engaged in any act of copyright infringement. "In order to establish a claim of copyright infringement, 'a plaintiff with a valid copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's [copyrighted work].'" *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010). Castro's allegation that Azaria starred in Huff and was a producer of the show, at most, places him at the "scene" of what Castro asserts, in conclusory fashion, was

an act of copyright infringement. Other than his connection to Huff by occupation, no act or omission is pleaded against him. That is nowhere close to being sufficient to plausibly allege that Azaria is "liable for the alleged misconduct." *See Thayil v. Fox Corp.*, No. 11 CIV. 4791 SAS, 2012 WL 364034, at *4 (S.D.N.Y. Feb. 2, 2012). Castro's claim for copyright infringement must be dismissed as to Azaria.

   c. Little Chicken

The beat goes on with Castro's claim against Little Chicken. The amended complaint sets forth no factual allegations that Little Chicken either had access to, or actually copied, the manuscript or that it was involved in any purported infringement. *See, e.g.*, Dkt. No. 8 ¶ 57 (referring to Ilene Chaiken, Little Chicken's principal, as having "steely self-assurance and belief ... in the lie that [she] created this plaintiff's work"); *but see Intersong-USA v. CBS, Inc.*, 757 F. Supp. 274, 281 (S.D.N.Y. 1991) ("A plaintiff must offer significant, affirmative and probative evidence to support a claim of access. Conjecture or speculation of access will not suffice.") (internal citations omitted). In the complete absence of factual allegations even suggesting Little Chicken's infringement, Castro's copyright claim against it must be dismissed.

   d. William Morris Agency

By alleging that Castro sent the manuscript to "Cusack in care of his agent Gaby Morgerman at The William Morris Agency," Dkt. No. 8 ¶ 5, the amended complaint at least arguably points to a connection—remote as it is—between the manuscript and WMA. That is not only where the amended complaint's allegations begin, however, but also where they end. The amended complaint fails to allege, for instance, that WMA had any role in the creation, broadcast or dissemination of the three works that Castro claims infringed on his copyright to the manuscript. *See Peter F. Gaito Architecture, LLC*, 602 F.3d at 63 (defendant must have

13

"actually copied" the copyrighted work). On review of his opposition, Castro offers nothing substantive to rebut this conclusion. Accordingly, the copyright claim against WMA must be dismissed.

e. Showtime, Sony Pictures, ABC and Twentieth Century Fox

Four of the defendants have filed motions to dismiss, in which several of the remaining defendants have joined, alleging that, as a matter of law, copyright infringement did not occur here. Showtime and Sony Pictures have moved to dismiss copyright infringement relating to Huff, ABC has moved to dismiss relating to Dirt and Twentieth Century Fox has moved to dismiss relating to Empire. For the reasons stated earlier, Castro's claim of copyright infringement, as it concerns Huff, is barred by *res judicata*. The Court, accordingly, need not delve further into Showtime and Sony Pictures's motion to dismiss. Their motion must be granted with prejudice.

Castro's claim of copyright infringement, as it concerns Dirt and Empire, is no more meritorious that the claim related to Huff. Although questions of non-infringement "have traditionally been reserved for the trier of fact, . . . it is entirely appropriate for a district court to resolve that question as a matter of law" if no reasonable jury could find that subject works are substantially similar. *Peter F. Gaito Architecture, LLC*, 602 F.3d at 63-65 ("[W]e see no error in the district court's decision to resolve the question of substantial similarity as a matter of law on a Rule 12(b)(6) motion to dismiss."). In other words, the Court need not allow a copyright claim to proceed to discovery if, as a matter of law, a comparison of the protected work with the allegedly infringing works reveals no plausible inference of infringement.

Castro's claim for copyright infringement must be dismissed because no genuine dispute of material fact exists as to the core elements of his claim: whether ABC or Twentieth Century

Fox actually copied the manuscript, and whether any substantial similarity exists between the manuscript's protectible elements and either Empire[11] or Dirt. Castro falls at the outset by completely failing to plead "actual copying" of his manuscript. "Because direct evidence of copying is seldom available, a plaintiff may establish copying circumstantially 'by demonstrating that the person who composed the defendant's work had access to the copyrighted material.'" *Jorgensen*, 351 F.3d at 51. A plaintiff that adequately pleads "access" must then show sufficient similarities between the two works to raise an inference of actual copying. *Id.* (citing *Repp v. Webber*, 132 F.3d 882, 889 (2d Cir. 1997)). Unpublished works, such as the manuscript, are "considered not to have been widely disseminated." *Gal v. Viacom Int'l, Inc.*, 518 F. Supp. 2d 526, 538 (S.D.N.Y. 2007).

Castro simply cannot connect the dots between John Cusack, to whom he mailed the manuscript, and any of the alleged infringers. Castro's theory relies on wholesale speculation that, like a regifted Christmas fruitcake, the manuscript found its way from John Cusack's agency to an array of actors, talent agencies and production companies. Such bald assertions are not sufficient to plausibly allege access. *See Gaste v. Kaiserman*, 863 F.2d 1061, 1066 (2d Cir. 1988) ("Access must be more than a bare possibility and may not be inferred through speculation or conjecture."); *see also Jorgensen*, 351 F.3d at 51 ("Access means that an alleged infringer had a 'reasonable possibility' – not simply a 'bare possibility' – of [encountering] the prior work[.]").

Castro, furthermore, cannot demonstrate any substantial similarity between the manuscript and either Empire or Dirt. To be sure, themes he complains were stolen from his work – love, family relationships, drug usage, mental health concerns – appear in countless

---

[11] Castro's claim relates only to the first season of Empire. *See* Dkt. No. 108-1 at 8 n.6.

television shows, including, but certainly not limited to, Empire and Dirt. But these elements are, in reality, "unprotectable *scènes à faire*."[12] *Cf. Williams v. A & E Television Networks*, 122 F. Supp. 3d 157, 163-65 (S.D.N.Y. 2015) (dismissing copyright infringement claim where two works both involved "the idea of a reality show about arranged marriages between strangers" but where "an objective observer" would not find them to be substantially similar); *see also Attia v. Soc'y of New York Hosp.*, 201 F.3d 50, 54 (2d Cir. 1999) ("It is a fundamental principle of our copyright doctrine that ideas, concepts, and processes are not protected from copying.").

Any fair and objective review of the manuscript's purported "similarities" with Empire and Dirt convincingly demonstrates that no infringement of protectible ideas occurred here. The manuscript centers on Chase Anderson, a music journalist for Music Slate magazine. Chase's "interviews lean more tabloid but beneath the tough exterior he has a good heart." Dkt. No. 8 ¶ 10. Chase is assigned by his editor to interview Jared Keller, "a rising pop star." *Id.* Chase and Jared "form an unlikely romantic relationship," but Jared is hiding a secret – he has schizophrenia – that soon becomes the focus of the story. *Id.*

Dirt, on the other hand, is a "Faustian epic drama about the deception and misery underlying the world of tabloid journalism."[13] Dkt. No. 90-1 at 2. The show follows "antihero Lucy Spiller, the powerful and icily beautiful editor-in-chief of the tabloid magazine Dirt/Now," who is joined by her best friend, a functioning schizophrenic who "will do anything, including

---

[12] *Scènes à faire* are "scenes that necessarily result from the choice of a setting or situation." *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 50 (2d Cir. 1986). Copyright protection does not extend to them, nor does it extend "to copyright or 'stock' themes commonly linked to a particular genre." *Id.*

[13] Although "in copyright infringement cases the works themselves supersede and control contrary descriptions of them[,]" *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 52 (2d Cir. 1986), Castro does not dispute ABC's and Twentieth Century Fox's descriptions of Dirt and Empire.

sacrificing minor body parts, to get Lucy her shot. The drama unfolds around this unlikely friendship as each week Lucy and her team scramble to break another exclusive cover." *Id.*

Empire, meanwhile, is a "lush, over-the-top, dialogue-rich contemporary soap opera, reminiscent of 1980s prime time soap operas such as *Dallas* and *Dynasty*, with numerous characters, twists, turns, and subplots." Dkt. No. 108-1 at 2. Empire centers on "the exploits of the fictional Lyon family—rapper-turned-music mogul Lucious Lyon, his ex-wife Cookie Lyon, who is also an accomplished music producer, and their three sons as they battle for control of their family's entertainment conglomerate." *Id.* at 5. Empire's plot is set into high gear when Lucious tells his sons about his diagnosis with ALS and Cookie is released from prison after serving a 17-year sentence. *Id.* at 6. Cookie is "a fiercely loyal and supportive mother, but is also flawed, showing unconditional love for her gay son" but disapproving of another son's lack of discipline. *Id.*

It should be no surprise that there are some similarities between the manuscript, Empire and Dirt. Even if the Court were to assume that "actual copying" took place here, Castro fails to show that any similarities are *protectible* by copyright law. *Cf. Williams v. Crichton*, 84 F.3d 581, 589 (2d Cir. 1996):

> Williams contends that the children in [his works], and the children in the *Jurassic Park* works, Tim and Alexis, along with the respective guides Jake DuMel and Dr. Grant, are substantially similar. It is true that both Peter and Tim are dinosaur enthusiasts, that both groups of children are siblings, and that both guides are intelligent. Likewise, we recognize that in both works the characters spend the night in the dinosaur zoo and escape from dangerous dinosaurs by helicopter through the combined wit of the children and adults.

These similarities, however, do not suggest infringement.

*See also Brown v. Perdue*, No. 04 CIV. 7417 (GBD), 2005 WL 1863673, at *6 (S.D.N.Y. Aug. 4, 2005) (dismissing copyright claim where both works in question included "notions of a divine

feminine, the unity of male and female in pagan worship, the importance of Sophia, the 'Great Goddess' of the Gnostic Gospels, the fact that history is relative and is controlled by victors, not losers, the importance of the Roman Emperor Constantine in requiring a transition from a female to a male dominated religion, as well as to create a unified religion having a common dogma, [and] the quest not only for physical objects, but for spiritual fulfillment"), *aff'd*, 177 F. App'x 121 (2d Cir. 2006) (summary order).

In sum, the manuscript tells the story of "two emotionally damaged men who fall in love, overcome their internal obstacles, and are able to alter the trajectory of their lives," Dkt. No. 90-1 at 16, a storyline described with such vagaries that it could be applied to countless other works. Revealing that the emperor, in fact, has no clothes, plaintiff concedes that the manuscript includes "*universal themes* . . . [including] loss, conflict with parents, sexuality and ultimately triumph over adversity and finding love." Dkt. No. 90-13 at 15 (emphasis added). That those universal themes also appear in Empire and Dirt speaks to their general nature and does not, without more, give rise to an inference of copyright infringement. Accordingly, Twentieth Century Fox's motion to dismiss and ABC's motion to dismiss are granted with prejudice.

IV. Leave to Amend and Default Judgment

"[L]eave to amend a complaint should be freely given when justice so requires. However, it is well established that leave to amend a complaint need not be granted when amendment would be futile." *Sodhi v. Mercedes Benz Fin. Servs., USA, LLC*, 957 F. Supp. 2d 252, 255 (E.D.N.Y. 2013) (internal quotations omitted) (citing *Ellis v. Chao,* 336 F.3d 114, 127 (2d Cir. 2003)). "[A]n amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 440 (S.D.N.Y. 2012). There is absolutely no indication that Castro could remedy the

complaint's defects if he were given leave to amend it yet again. Castro has failed to plausibly allege that *any defendant*, whether properly served or not, infringed on the manuscript. As a result, the Court dismisses the amended complaint with prejudice as to all named defendants.

As Castro has not stated a plausible claim for copyright infringement, conversion or conspiracy against any defendant properly served or not, and for all of the other reasons outlined above, his motions for default judgment, Dkt. Nos. 89, 133, are likewise denied.

Conclusion

For the foregoing reasons, the Court grants the motions to dismiss filed by Showtime and Sony Pictures, Dkt. No. 84; ABC, Dkt. No. 90; Imagine Television, Dkt. No. 92; WMA, Dkt. No. 96; Hank Azaria, Dkt. No. 106; Twentieth Century Fox, Dkt. No. 108; and Little Chicken, Dkt. No. 119. Imagine Television's motion for joinder is also granted. Dkt. No. 115.

Additionally, upon *de novo* review, the Court finds Magistrate Judge Bloom's R&R to be correct, well-reasoned and free of reversible error. The Court, therefore, adopts the R&R in its entirety, supplemented by this Memorandum & Order, as the opinion of the Court. See Dkt. No. 137.[14] In line with Judge Bloom's recommendation, Danny Strong's motion to quash service, Dkt. No. 27, and Lee Daniels Entertainment's motion to quash service, Dkt. No. 131, are granted.

Because the Court determines that any prospective amended complaint would be futile, further leave to amend or, for the same reasons, effect proper service is denied.

Plaintiff's motions for default judgment, Dkt. Nos. 89, 133, are denied.

The Court certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Memorandum & Order would not be taken in good faith and, therefore, *in forma pauperis* is

---

[14] Judge Bloom's original R&R, Dkt. No. 110, is terminated as moot.

denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45, 82 S. Ct. 917, 920-21, 8 L. Ed. 2d 21 (1962).

The Clerk of Court is directed to send a copy of this Memorandum & Order to the *pro se* plaintiff, enter judgment accordingly and close this case.

So Ordered.

Dated: Brooklyn, New York
July 16, 2019

/s/ USDJ ERIC N. VITALIANO
―――――――――――――――――
ERIC N. VITALIANO
United States District Judge